**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER: 9:21-cv-81777**

AFFORDABLE AERIAL PHOTOGRAPHY,
INC.

      Plaintiff,

v.

SHOWROOM INTERIORS, LLC, d/b/a
VESTA, et al.

      Defendants.

_____/

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

Defendants, LARRY ROSS ("Mr. Ross") and TILLINGHAST HOLDINGS, LLC ("Tillinghast"), hereby file this Motion for Final Summary Judgment on Counts I, II and III of Plaintiff, AFFORDABLE AERIAL PHOTOGRAPHY, INC.'S ("AAP"), Second Amended Complaint ("SAC"), and in support thereof states as follows:

AAP alleges direct copyright infringement against Mr. Ross (Count I); vicarious copyright infringement against Tillinghast (Count II); and inducement of copyright infringement against Mr. Ross and Tillinghast (Count III). AAP's claims stem from two emails Mr. Ross sent with hyperlinks leading to webpages with AAP's copyrighted content.

Defendants are entitled to final summary judgment on all three Counts, as a matter of law for the following reasons: (1) emailing a hyperlink leading to copyrighted content, without more, is not infringement because a hyperlink is not a "copy" of copyrighted content; (2) in the alternative, Mr. Ross' "use" of the AAP content to which the hyperlinks lead was a fair use, pursuant to 17 U.S.C. § 107; (3) AAP's vicarious liability claim against Tillinghast fails because (a) there were no underlying acts of direct infringement committed by Mr. Ross; and (b) it did

not have a direct financial interest in Mr. Ross' allegedly infringing activities; and (4) AAP's inducement of infringement claim fails because (a) there was no actual infringement by Showroom Interiors, LLC d/b/a Vesta ("Vesta") from two hyperlinks Mr. Ross sent Jenny Longacre; and (b) because there is no evidence of any intent on the part of Mr. Ross or Tillinghast to bring about infringement by Vesta.

## MEMORANDUM OF LAW

### I.      SUMMARY JUDGMENT STANDARD

A summary judgment movant is not required to negate or disprove the opponent's claim, but has the initial responsibility of informing the court of the basis for its motion and identifying "the pleadings, depositions answers to interrogatories and admissions on file, together with the affidavits, if any," demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor." *Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1307-08 (S.D. Fla. 2014) (citation omitted).

### II.      GENERAL COPYRIGHT LAW

For a copyright infringement claim one must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Midlevelu, Inc. v. ACI Info. Grp.*, 2019 U.S. Dist. LEXIS 223390 (S.D. Fla. Sep. 10, 2019) (citations omitted). To

prove the second element of copying, a plaintiff must show that the defendant violated one of the six enumerated rights outlined in 17 U.S.C. § 106: (1) to reproduce; (2) to prepare derivative works; (3) to distribute copies; (4) to perform the copyrighted work publicly; (5) to display the copyrighted work publicly; and (6) to perform publicly by means of a digital audio transmission.

In Counts I and II, AAP alleges that Mr. Ross and Tillinghast violated his rights to reproduce, prepare derivatives of, to distribute and to display the Works, pursuant to 17 U.S.C. § 106 (1), (2), (3) and (5). In Count III, AAP alleges that Ross and Tillinghast violated his rights to reproduce, distribute and to display the Works, pursuant to 17 U.S.C. § 106 (1), (3) and (5).

### III.   MR. ROSS DID NOT COMMIT DIRECT COPYRIGHT INFRINGEMENT.

AAP alleges Mr. Ross committed copyright infringement when he sent two July 29, 2020 emails to Jenny Longacre of Defendant, Showroom Interiors, LLC d/b/a Vesta ("Vesta"), each containing a hyperlink. *See* SAC [ECF No. 101], ¶ 24, 31; SAC Exhibit 11 [ECF No. 101-13].

The first email has a hyperlink[1] that leads to a webpage with 22 AAP photos (12251 Tillinghast Cir_111-12251 Tillinghast Cir_132), all with Copyright Certificate of Registration ("CCR") No. VA 2-222-311 ("DB Link 3"). *See Exhibit "D,"* AAP's Answers to Defendants' 1st Set of Interrogatories ("AAP Rogg Ans."), no. 4. The second email includes a hyperlink[2] that leads to a webpage with a house tour video with 29 AAP photos. *See* SAC Exhibit 1A [ECF No. 101-1], pgs. 2-8, 10, 13, 15, 17, 18, 20; SAC Exhibit 1B [ECF No. 101-2], pgs. 2, 7, 9, 11, 15, 99, 106; SAC Exhibit 11 [ECF No. 101-13], pg. 3. AAP claims when Mr. Ross emailed Ms. Longacre DB Link 3 and the Vimeo Link (collectively, the "Links"), he "copied, displayed, and distributed the Works at issue in this case and made derivatives of the Works without AAP's authorization," damaging AAP as a result. *See* SAC [ECF No. 101], ¶ 37, 40.

---

[1] https://www.dropbox.com/sh/hkega0ucta2w3mt/AAD7YQ3qM_jNWzMR4LiErAKwa?dl=0 = DB Link 3
[2] https://vimeo.com/rspfl/review/431646621/1153077a9d

### A. Mr. Ross did not violate AAP's 17 U.S.C. §106 rights because just sending someone a hyperlink is not copyright infringement.

Emailing a hyperlink that leads to copyrighted material is generally not considered copyright infringement. *Pearson Educ., Inc. v. Ishayev*, 963 F. Supp. 2d 239, 250-51 (S.D.N.Y. 2013). Interestingly, there appears to be no case law directly addressing this issue in the Eleventh Circuit or Florida District Courts. One case, *Midlevelu, Inc.*, in an opinion by U.S. Magistrate Judge, Bruce Reinhart, accepts certain principals which support the rule that emailing a hyperlink is typically not infringement, but it did not specifically address the issue of sending hyperlinks. 2019 U.S. Dist. LEXIS 223390, at *9-10. The issue has been addressed in several other jurisdictions however, including the Second, Third, Seventh, and Ninth Circuits.

In *Pearson*, the plaintiffs authored educational textbooks and accompanying solutions manuals. 963 F. Supp. 2d at 243. They accused the two defendants, Ishayev and Leykina, of infringement via the unauthorized sale of their manuals. Four sales were at issue, all committed by an individual, Siewert. The first three were completed upon Siewert's receipt of an email containing zip files of the copyrighted manuals. For the fourth and last sale, Siewert used a website to purchase two manuals. After payment, Siewert received an email from the website "containing three separate hyperlinks to a website called filesonic.com," which Siewert clicked on and then downloaded the manuals from filesonic.com herself. *Id.* at 245. In finding the plaintiffs were not entitled to summary judgment with regard to the fourth sale because no copyright infringement occurred, the Court explained:

> **As a matter of law, sending an email containing a hyperlink to a site facilitating the sale of a copyrighted work does not itself constitute copyright infringement.** A hyperlink (or HTML instructions directing an internet user to a particular website) is the digital equivalent of giving the recipient driving directions to another website on the Internet. **A hyperlink does not itself contain any substantive content**; in that important sense, a hyperlink differs from a zip file. **<u>Because hyperlinks do not themselves contain the copyrighted or protected derivative works, forwarding them does not infringe on any of a copyright owner's five exclusive rights under § 106.</u>** *See MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 U.S. Dist. LEXIS 47313, 2012 WL

1107648, at *12 (S.D.N.Y. Mar. 30, 2012) ("Because the actual transfer of a file between computers must occur, merely providing a 'link' to a site containing copyrighted material does not constitute direct infringement of a holder's distribution right."), *adhered to on reconsideration*, 2012 U.S. Dist. LEXIS 100492, 2012 WL 2929392 (S.D.N.Y. July 18, 2012); *see also Perfect 10, Inc. v. Amazon.com, Inc*., **508 F.3d 1146, 1161 (9th Cir. 2007)** (holding that providing HTML instructions that direct a user to a website housing copyrighted images "does not constitute direct infringement of the copyright owner's display rights" because "providing HTML instructions is not equivalent to showing a copy"); *Arista Records, Inc. v. Mp3Board, Inc*., No. 00 CIV. 4660(SHS), 2002 U.S. Dist. LEXIS 16165, 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (holding, on motion for summary judgment, that supplying hyperlinks to unauthorized, infringing files is, alone, insufficient to establish infringement).

*Id.* at 250-51 (bold and underline emphasis added).  In light of the above case law, the *Pearson* court reasoned, "the link was not itself a digital copy of any of the protected materials, and did not contain a copy of any of those materials."  *Id.* at 251.

Without conclusive evidence Ishayev himself uploaded to filesonic.com the files Siewert ultimately downloaded, or that he "reproduced or participated in the reproduction of [the manuals] before furnishing Siewert with the hyperlinks," he could not be held liable for copyright infringement as a matter of law.  *See also Joshco Tech, Ltd. Liab. Co. v. Does 1-4*, 2020 U.S. Dist. LEXIS 183029 (D. Nev. Oct. 2, 2020) ("Providing a link to another website where plaintiff's competitor allegedly uses a form that plaintiff claims infringes on plaintiff's copyright is not direct copyright infringement because sending an email containing a hyperlink, even if to a site that may infringe on a copyright, 'does not itself constitute copyright infringement.'" (citation omitted)); *Rosen v. eBay, Inc.*, 2018 U.S. Dist. LEXIS 222728, at *9-16 (C.D. Cal. Jan. 24, 2018) (A hyperlink or URL that directs a user to a location of copyrighted material, itself, is not an "identifiable copy of the work" and as such, hyperlinking to an image cannot constitute direct copyright infringement); *Microsoft Corp. v. Softicle .com*, 2017 U.S. Dist. LEXIS 216864, at *5-7 (D. N.J. Sep. 29, 2017) ("Providing a link to a website containing infringing material does not, as a matter of law, constitute direct copyright infringement."); *Batesville Servs. v. Funeral Depot, Inc., No.* 2004 U.S. Dist. LEXIS 24336, at *31-36 (S.D. Ind.

Nov. 10, 2004) (the general principle is linking is not copying, but there are exceptions when the linker also controls or modifies the content on the website the link directs to).

Many of the aforementioned cases cite to *Perfect 10, Inc.* when holding that providing someone with a hyperlink to copyrighted material is not direct infringement.  In *Perfect 10*, the Ninth Circuit crystalized its "Server Test" which provides, "a computer owner that stores an image as electronic information and serves that electronic information directly to the user… is displaying the electronic information in violation of a copyright holder's exclusive display right. Conversely, the owner of a computer that does not store and serve the electronic information to a user is not displaying that information, even if such owner in-line links to or frames the electronic information." *Id.* at 1159.  Using this reasoning, the Ninth Circuit determined:

> Instead of communicating a copy of the image, Google provides HTML instructions **that direct a user's browser to a website publisher's computer that stores the full-size photographic image. Providing these HTML instructions is not equivalent to showing a copy.** First, the HTML instructions **are lines of text, not a photographic image.** Second, HTML instructions **do not themselves cause infringing images to appear** on the user's computer screen. The HTML **merely gives the address of the image to the user's browser**. The browser then interacts with the computer that stores the infringing image. It is this interaction that causes an infringing image to appear on the user's computer screen. Google may facilitate the user's access to infringing images. However, such assistance raises only contributory liability issues, *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005), *Napster,* 239 F.3d at 1019, **and does not constitute direct infringement of the copyright owner's display rights**.

*Id.* at 1161 (emphasis added).  For the same reasons – a link does not equal a copy –  the court held that Google did not violate the plaintiff's distribution right either.  *Id.* at 1162.

As mentioned, *supra*, it appears neither the Eleventh Circuit nor Florida's District Courts have directly addressed this issue.  However, at least one opinion out of the Southern District appears to support the underlying logic in *Perfect 10* that leads one to the conclusion that sending someone a hyperlink via email is not direct infringement because a hyperlink is not an actual copy of the copyrighted material, just an address to the location of where the copyrighted

material is stored.   In *Midlevelu, Inc.*, the defendant attempted to argue that its display of copyrighted articles on its website was not infringement pursuant to *Perfect 10* because the link it provides for the articles directs the user's computer to the copyright owner's site.   2019 U.S. Dist. LEXIS 223390, at \*9.   The Court noted that in *Perfect 10* the court:

> [E]xplained that '[p]roviding these HTML instructions is not equivalent to showing a copy' because 'the HTML merely gives the address of the image to the user's browser.'  Because Google did not store any full-size images on its computer servers, it did not have a 'copy' of the image to communicate and display in violation of Perfect 10's copyrights.

*Id.* (*citing Perfect 10, Inc.,* 508 F.3d 1146, 1161).   The Court then went on to hold it could not enter summary judgment at that time because a disputed issue of fact remained as to whether the defendant stored the plaintiff's copyrighted content on its server.   *Id.* at \*10.

Here, the only record evidence regarding Mr. Ross' alleged direct infringement is that he sent Ms. Longacre two emails with Links to AAP's copyrighted content.   *See* SAC, ¶ 31 [ECF No. 101]; SAC Exhibit 11 [ECF No. 101-13], pgs. 2-4.   Neither of Mr. Ross' emails depict AAP's photos, and because they only send a hyperlink, they do not contain any copies of the photos, and as such do not constitute a distribution of any copies of the photos.   *See* SAC Exhibit 11 [ECF No. 101-13], pgs. 2-4.   Further, Mr. Ross did not upload the 22 Works or home tour video to Dropbox.com or Vimeo.com to make them accessible via the Links.   *See Exhibit "C,"* Affidavit of Larry Ross ("Ross Affidavit"), ¶ 8, 11.   Mr. Ross did not control and was not able to modify the webpages to which the Links lead, nor did he own or control the server that hosted the webpages.   *See* id., ¶ 9, 10, 12, 13.   Lastly, although it does not matter for the direct infringement claim, neither Ms. Longacre nor Vesta gave Mr. Ross or Tillinghast any sort of payment or consideration for the Links.   *See* id., ¶ 15.   *See Exhibit "E,"* Affidavit of Tillinghast Corporate Representative ("Tillinghast Affidavit"), ¶ 11.

Under such circumstances, Mr. Ross sending Ms. Longacre hyperlinks that lead to copyrighted content when clicked, **without more**, is not direct copyright infringement as a matter of law, because a hyperlink is not a "copy" of any copyrighted material. *See Perfect 10, Inc.*, 508 F. 3d at 1161; *Pearson Educ.,* 963 F. Supp. 2d at 250-51. The "without more" missing in this case is exemplified by the fact that Mr. Ross' emails did not depict any of AAP's photos or contain any actual photo files and Mr. Ross did not: modify or upload the photos or video tour to the websites; control or modify the webpages on which the photos appear; or control or own the webpage servers. *See Perfect 10, Inc.*, 508 F. 3d at 1161, *Pearson Educ.*, 963 F. Supp. 2d at 250, fn. 9, 251; *Batesville Servs*., 2004 U.S. Dist. LEXIS 24336, at *31-36.

Since a hyperlink is not an actual "copy" of copyrighted content, simply sending one is not a violation of any of the five rights outlined in 17 U.S.C. §106, particularly the rights to reproduce, make derivatives, distribute and display. *Pearson Educ.,* 963 F. Supp. 2d at 251 ("Because hyperlinks do not themselves contain the copyrighted or protected derivative works, forwarding them does not infringe on any of a copyright owner's five exclusive rights under §106"). Consequently, Mr. Ross is entitled to summary judgment as a matter of law on AAP's Count I claim of direct copyright infringement.

**B.  In the alternative, Mr. Ross' "use" of the Works was fair use.**

In the alternative, Mr. Ross is entitled to final summary judgment on Count I because his "use" of the Works to which each of the hyperlinks leads was fair use, pursuant to 17 U.S.C. §107. Despite the protections in 17 U.S.C. §106, "the fair use of a copyrighted work…for purposes such as criticism, comment…is not an infringement of copyright."  17 U.S.C. § 107. Four factors are weighed in deciding whether a use is fair under the statute: (1) the purpose and character of the allegedly infringing use; (2) the nature of the copyrighted work; (3) the amount

of the copyrighted work used; (4) and the effect of the use on the potential market or value of the copyrighted work. *Id.* Each of the four factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Katz v. Google Inc*., 802 F. 3d 1178, 1182 (11th 2015) (*quoting Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 578 (1994)).

The **first factor in the fair use analysis – purpose and character of the work** – requires consideration of "whether the use serves a nonprofit educational purpose, as opposed to a commercial purpose; and (2) the degree to which the work is a transformative use, as opposed to a merely superseding use, of the copyrighted work." *Id.* (*quoting Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1309 (11th Cir. 2008)). To the extent that Mr. Ross "used" certain works of AAP by sending the Links to Ms. Longacre, his use was noncommercial and transformative.

Mr. Ross' sole purpose in sending Ms. Longacre the Links was to show her how Vesta's interior design work was going to be depicted on MLS, for her review and comment. *See* Ross Affidavit, ¶ 17; SAC Exhibit 11 [D.E. 101-13], pg. 4 ("We will be swapping some of these for similar shots in the MLS..."). Mr. Ross received no consideration, payment, profit or other commercial benefit from sending Ms. Longacre the Links, and there is no evidence on the record which conclusively establishes otherwise. *See* id., ¶ 15. *See also Katz,* 802 F. 3d at 1182 (fact defendant never made any profits from her use of the work weighed in favor of fair use).

Mr. Ross' "use" of the Works in the Links was transformative. A transformative use of a work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* (*quoting Campbell*, 510 U.S. at 579). *See also Philpot v. MyArea Network, Inc.*, 2021 U.S. Dist. LEXIS 119423, at * 30 (M.D. Fla. June 28, 2021) (when a further purpose or context is added to a photographic work, the use is considered

at least "minimally transformative" (citation omitted.)).  A use that "serves the same 'overall function' as the original work" is not transformative.  *Cambridge Univ. Press v. Patton,* 769 F. 3d 1232, 1262 (11th Cir. 2014).  "Even verbatim copying 'may be transformative so long as the copy serves a different function than the original work.'"  *Id.* (*quoting Perfect 10, Inc.*, 508 F. 3d at 1165).  *See also Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 185 (D. Mass. 2007) ("To determine exactly how much transformation occurred in CBS's broadcast of the photo requires an analysis of the original, intended meaning and use of the photograph and its ultimate meaning and [CBS's] use.").

The original purpose of the Works was to sell the Tillinghast residence.  *See Exhibit "B,"* AAP Corporate Representative Robert Stevens 6.3.22 Deposition Transcript ("Stevens Trans."), 14:18-15:18.  However, Mr. Ross did not send DB Link 3 or the Vimeo Link to Ms. Longacre in an attempt to sell or market the Tillinghast residence – he did so in order to advise Ms. Longacre of how Vesta's staging work would be depicted to the public on MLS, so that she could review and comment on same if need be.  *See* Ross Affidavit, ¶ 17.  The "use" was for an "analytic, informational purpose," and such "use" was entirely different from the use for which the Works were created in the first place.  *See Rosen*, 2018 U.S. Dist. 222728, at *21; *Katz,* 802 F. 3d at 1183.  Accordingly, Mr. Ross' "use" in this instance is transformative because it altered the original purpose of the Works, adding new meaning and message, and because this analytical and informational "use" – showing someone photos depicting their work for comment and review – did not "exploit the original works by replacing payment to Plaintiff for authorized copies of his works."  *See id.*, at *20, 25 (citation omitted); Katz, 802 F. 3d at 1183.  *See also Cambridge Univ. Press,* 769 F. 3d at 1262.

Because Mr. Ross' "use" of the Works to which the Links leads was noncommercial and transformative, the first fair use factor weighs in his favor.  *See Katz*, 802 F. 3d at 1183.

The **second factor – nature of the copyrighted work** – involves consideration of: "(1) whether the work was previously published and (2) whether the work is primarily creative or factual."  *Id.* (citation omitted).  The Vimeo Link was published on MLS since at least June 2020.  *See* Ross Affidavit, ¶ 3.  *See also Exhibit "F,"* LRG Request for Production Response Documents, LEIBOWITZ 000056-57.  AAP admitted that all of the Works were published at least as of the date the MLS listing was published, which was in June 2020.  *See* Stevens Trans., 141:1-9.  *See* Ross Affidavit, ¶ 3.

Further, the Works to which the Links lead depict the interior and exterior of a residence for sale.  *See* SAC Exhibit 1A [ECF No. 101-1], pgs. 2-8, 10, 13-23; SAC Exhibit 1B [ECF No. 101-2], pgs. 2, 7, 9, 11, 15, 99, 106.  The Works are not "highly creative" nor can they be described as having any particular "originality" or "inventiveness" – they are just photographs of a residence – there are no "creative judgments…apparent in [the] photograph[s]."  *See Cambridge Univ. Press,* 769 F. 3d at 1268 (citations omitted).   In fact, AAP's Stevens takes photographs of a particular room or area from multiple angles for efficiency purposes and to minimalize client complaints about thoroughness, not due to any creative purpose.  *See* Stevens Trans., 12:21-13:16 ("[I]f I'm shooting a dining room, I'm not just going to give them one angle. I'm going to look at the whole dining room and probably shoot it from each corner of the room, because I can. That way it kind of eliminates, whoa, Robert, why did you shoot it from the northeast looking out towards the loggia. I learned a long time ago, just cover your bases and shoot it all, especially on the important, expensive homes.").  *See also* id., at 13:17-14:17.

The Works depicted in the Links were "previously published and primarily factual." *See Katz,* 802 F. 3d at 1183. As such, factor two weighs in favor of fair use, or is at least neutral. *See id. See also Philpot*, 2021 U.S. Dist. LEXIS 119423, at * 31-32 (for photos "not designed primarily to express [the photographer's] ideas, emotions, or feelings, courts have found that the impact on the fair-use inquiry to be neutral" (citation and internal quotations omitted).)

The **third factor – amount of the work used –** considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Id.* (*citing* 17 U.S.C. 107(3)). This factor has less weight for photographs because "all or most of the work often must be used in order to preserve any meaning at all—than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value." *See id.* at 1183-84 (*quoting Fitzgerald,* 491 F. Supp. 2d at 188). Considering the works at issue here are photographs and Mr. Ross' "use" of anything less than the full photographic images would have made them useless for the purposes which he sent them to Ms. Longacre in the first place – to show her how Vesta's design work would be depicted on MLS – this third factor is neutral. *See id.* at 1184. *See also Rosen*, 2018 U.S. Dist. LEXIS 222728, at * 23.

The primary inquiries for the **fourth factor – effect of the use on the work's potential market –** are: "(1) the extent of the market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant[ ] would result in a substantially adverse impact on the potential market." *Cambridge Univ. Press,* 769 F. 3d at 1275 (citation and internal quotations omitted).

As to the extent of market harm caused to AAP due to Mr. Ross' "use" of the Works, AAP alleges that all examples of infringement by Vesta are depicted in Exhibit 4 to its Second Amended Complaint ("Vesta Exhibit 4"). *See* SAC [ECF No. 101], ¶ 27, 30; SAC Exhibit 3

[D.E. 101-5]; and SAC Exhibit 4 [D.E. 101-6].  None of the AAP photos to which DB Link 3 leads are in Exhibit 4 to the SAC.  *See* AAP's Answers to First Set of Interrogatories, No. 4; SAC Exhibit 1A [D.E. 101-1], pgs. 13-23; SAC Exhibit 4 [D.E. 101-6]. Additionally, none of the images in the Vimeo video to which the Vimeo Link leads are in Exhibit 4 to the SAC, and this is apparent from the fact that all of the photos in Exhibit 4 had AAP's copyright protection language in their lower left corner, and none of the images in the Vimeo video contain any copyright protection language on them whatsoever.  *See* SAC Exhibit 4 [ECF No. 101-6]; Exhibit 11 [ECF No. 101-13]., pg. 3.  Without any evidence Vesta used any of the images to which the Links lead, a reasonable jury could not conclude that Mr. Ross' "use" of the Links actually caused AAP any market harm.

Mr. Ross' "use" of the Works to which DB Link 3 or the Vimeo link lead also did not have an adverse effect on their potential market because it did not "materially impair [AAP's] incentive to publish the work[s]," as it admittedly has none.  *See Katz*, 802 F. 3d at 1184.  First, AAP's corporate representative, Robert Stevens, admitted he did not ask the Leibowitzs where the Works would be published, he assumed "they're going to go on all the home search engine sites; Realtor.com, the Zillows, the Trulias of the world," and at that point the Works are available to "millions of people."  *See* Stevens Trans., 21:4-15.  At his deposition, Mr. Stevens admitted he had not recently checked such websites to check whether his Works were still online and when counsel represented to Mr. Stevens that as of the morning of his deposition, which took place on June 3, 2022 (almost two years after Mr. Ross' July 29, 2020 emails to Ms. Longacre), they were still published on at least Zillow.com, Mr. Stevens stated he did not have any reason to disagree with counsel's representation.  *See* Stevens Trans., 22:10-24.  Mr. Stevens then testified about the lack of any market for the Works due to homeowner privacy concerns:

> A: Fair statement.  That's kind of disturbing to know because, for example, Tiger Woods' ex-wife lives in the house, and what if, for example, she goes on Zillow and she sees pictures of the interior of her house with expensive artwork, possibly, and access points, how to get into the house, and she wants to have the damn pictures taken down; or if she had a Picasso, possibly, which I'm not saying she did, but if, for example -- if Larry or the Leibowitz' decided to go to Paris, France and bring a Picasso in the living room, and all of a sudden a year later it's still up on Zillow, Realtor.com, that would be a problem.  **Does she have to go fly to Zillow with a baseball bat to get them to take it down?  So there's problems with that.  The whole idea of using MLS searches, IVX feeds are to sell a house. And then when the house sells, there should be some kind of controls to pull the damn pictures down**.

*See* id. at 22:10-23:23 (emphasis added).  Mr. Stevens continued:

> **Well, my level of expectation is that the photos stay within boundaries**.  They're on home search sites that can be taken down easily.  **They're not to be -- people are not to build websites with them and memorialize my pictures on websites, or trying to sell furniture, or trying to promote their commerce and memorialize the photos**, because, again, [homeowner] could have called me, hey, Robert, the photos are up of my living room, please take them down. Now I have to figure out some way to help the guy out, take them down. I don't know if I got to get a team of attorneys to go knock on Zillow's door.

*See* id. at 23:24-24:18 (emphasis added).  *See also* id. at 25:25-26:18 (About AAP's Works in story on the Tillinghast homeowner, "there would be no way I would want my photos associated with that.  I can almost guarantee [the homeowner] would not approve of that being posted.").

Like the plaintiff in *Katz,* AAP is also extremely adamant about the fact that his goal is to prevent the publication of the Works.  *See* 802 F. 3d at 1184.  Mr. Stevens testified considerably regarding his concerns about the privacy of the homeowners and his desire that the photographs of their homes, including the Works, be removed from the internet immediately after the home is sold.  Under such circumstances, "there is no potential market for his work," and like the plaintiff in *Katz,* the likelihood of Mr. Stevens changing his mind in this regard is "incredibly remote," considering his testimony on the issue.  *See id.*  The lack of evidence that Mr. Ross' "use" of the Works depicted in DB Link 3 or the Vimeo Link "had or would have any impact upon any actual or potential market, the fourth factor weighs in favor of fair use."  *Id.  See also Philpot*, 2021 U.S. Dist. LEXIS 119423, at * 33 (Because a reasonable jury could conclude the

defendant's use of the photos did not affect the potential market or value of the photos, the fourth factor "weighs heavily in favor of fair use" (citation omitted).)

Fair use factor nos. 1 (the purpose and character of the work), 2 (the nature of the work), and 4 (the effect of the use on the potential market) weigh in Mr. Ross' favor. Fair use factor no. 3 (amount and substantiality of the work) is neutral. Under such circumstances, the Court's analysis should tilt "strongly in favor of fair use" and consequently, it would not err in granting Mr. Ross summary judgment in his favor on his defense of fair use on Count I for direct copyright infringement, "because every reasonable factfinder would conclude [Mr. Ross' "use" of the Works] constituted fair use." *See id. See also Philpot*, 2021 U.S. Dist. LEXIS 119423, at * 33-34 (" [O]ne factor weighs heavily in favor of fair use, while two are likely neutral, and one factor weighs slightly against fair use. A reasonable jury could conclude that [defendant's] use of both the Nelson and Santana photographs was fair under these circumstances.").

## IV.    TILLINGHAST IS NOT LIABLE FOR VICARIOUS INFRINGEMENT.

For vicarious copyright infringement, one must show: an underlying infringing activity; that the defendant has "the right and ability to supervise the infringing activity"; and that the defendant has a "direct financial interest" in the infringing activity. *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1214 (S.D. Fla. 2021) (citation omitted). In the Second Amended Complaint, AAP alleges "Tillinghast committed copyright infringement of the Works by distributing the Works to subcontractors… as evidence [sic] by the documents attached hereto as Exhibit 11…." *See* SAC [D.E. 101], ¶ 31. *See also* id., ¶ 45.

As explained *supra*, Exhibit 11 to the SAC is Mr. Ross' two July 29, 2020 emails to Ms. Longacre sending her the Links. [D.E. 101-13].

**A.  Due the Parties' recent Joint Stipulation, Tillinghast is entitled to final summary judgment on all vicarious liability claims related to Mr. Pozuelo's emails**

AAP has stipulated that it is no longer pursuing any of its claims in Count II that are premised upon Mr. Pozuelo's emails to The Fab Shop and JDLA [ECF No. 101-14, pgs. 2, 5-6]. *See* Joint Stipulation [ECF No. 110].  As such, Tillinghast is entitled to final summary judgment on Count II to the extent AAP's Count II claims are based upon Mr. Pozuelo's emails.

**B.  Tillinghast is entitled to final summary judgment on all vicarious liability claims related to Mr. Ross' emails**

Tillinghast cannot be held liable for the allegedly infringing activities of Mr. Ross because: (1) there is no underlying act of direct copyright infringement by Mr. Ross; and (2) there is zero record evidence Tillinghast had any direct financial interest in the allegedly infringing activities of Mr. Ross.  As such, Tillinghast is entitled to summary judgment on Count II of the Second Amended Complaint.

**1.  There is no underlying direct copyright infringement.**

As explained, *supra*, Mr. Ross did not commit any direct infringement because sending someone a hyperlink to copyrighted content, without more, is not infringement.  *See Pearson Educ., Inc.*, 963 F. Supp. 2d at 250-52.  In the alternative, Mr. Ross' "use" of the Works to which the Links lead was fair use, pursuant to 17 U.S.C. §107.  *See Millennium Funding,* 576 F. Supp. 3d at 1214.  If there was no underlying act of direct copyright infringement for which Mr. Ross or Mr. Pozuelo is responsible, then AAP's Count II for vicarious copyright infringement against Tillinghast must fail as a matter of law.  *See id.*

**2.  Tillinghast did not have a direct financial interest in Mr. Ross' allegedly infringing activities.**

Vicarious infringement requires that the defendant "profited directly from the infringing activity."  *Millennium Funding, Inc.*, 576 F. Supp. 3d at 1214 (citations omitted).  When AAP

was asked to identify Tillinghast's direct financial interest in Mr. Ross' allegedly infringing activities, AAP stated, "As part of the consideration for the Vesta contract, Tillinghast conveyed the rights to use all photos taken of the property.  This valuable consideration impacted the negotiated monetary cost of the staging contract."  *See* AAP Rogg Ans., no. 10.  AAP also claims "Tillinghast profited by using the photos as consideration in their staging contract with Vesta.  Had the photos not been included, the cost for the staging that Tillinghast would have paid would be higher.  That is, Tillinghast profited by not paying licensing fees to AAP to distribute the works."  *See* id. at no. 11.

There is zero evidence on the record to support AAP's allegations in interrogatory answer nos. 10 and 11, above.  There is no testimony from anyone at Vesta or from Mr. Ross, nor are there any documents showing that AAP's photos were used as consideration for Tillinghast's staging contract with Vesta, or that the photos affected the final price of the staging contract in any way, and this is because they absolutely did not.  *See* Tillinghast Affidavit, ¶ 14-16.  When AAP had an opportunity to obtain sworn testimony from Mr. Ross on this issue, it did not delve into these issues.  *See Exhibit "A,"* Larry Ross 12.15.20 Deposition Transcript, 36:5-37:1.  Tillinghast had no direct or indirect financial interest in, nor did it profit in any way from, Mr. Ross' act of sending the Links to Ms. Longacre/Vesta.  *See* Tillinghast Affidavit, ¶ 11.

A jury could not find, based upon this record, that Tillinghast had a direct financial interest in or profited in any way from Mr. Ross' emailing the Links to Ms. Longacre.  As such, Tillinghast is entitled to final summary judgment on AAP's Count II for vicarious copyright infringement as a matter of law.

## V.     TILLINGHAST IS NOT LIABLE FOR INDUCEMENT OF INFRINGEMENT.

AAP alleges Mr. Ross and Tillinghast took "affirmative steps" to foster Vesta's alleged infringement when Mr. Ross sent Ms. Longacre the Links.  *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 940 (2005) is the seminal case on inducement of copyright infringement and states to impose liability for inducement of infringement, the following must be established: (1) "intent to bring about infringement;" (2) "distribution of a device suitable for infringing use;" and "evidence of actual infringement by recipients of the device."[3]

### A.  Due the Parties' recent Joint Stipulation, Tillinghast is entitled to final summary judgment on all inducement claims related to Mr. Pozuelo's emails

AAP has stipulated it is no longer pursuing any of its claims in Count III premised upon Mr. Pozuelo's emails to The Fab Shop and JDLA [ECF No. 101-14, pgs. 2, 5-6].  *See* Joint Stipulation [ECF No. 110].  As such, Tillinghast is entitled to final summary judgment on Count III to the extent AAP's Count III claims are based upon Mr. Pozuelo's emails

### B.  Defendant are not liable for inducing Vesta to commit copyright infringement.

#### 1.  There was no actual infringement by Vesta via the Links.

According to AAP, all of Vesta's alleged copyright infringement is depicted in Vesta Exhibit 4.  *See* SAC [ECF 101], ¶ 30.  All of the photos in Vesta Exhibit 4 have AAP's copyright language in white font in the lower left corner of the photos.  *See* SAC Exhibit 4 [ECF no. 101-6].  None of the Works to which DB Link 3 leads are depicted in Vesta Exhibit 4.  *See* AAP's Rogg Ans., no. 4; SAC Exhibit 1A [D.E. 101-1], pgs. 13-23; SAC Exhibit 4 [D.E. 101-6]. Of the 29 AAP photos depicted in the video to which the Vimeo Link leads, only six are depicted in Vesta Exhibit 4: 12251 Tillinghast Cir_009, 012, 015, 017, 030, and 049, all with CCR no. VA

---

[3] As to factor two, the only "device" that could possibly qualify here are the actual Links.  As such, although Mr. Ross and Tillinghast do not concede the Links are properly considered "devices" pursuant to inducement of infringement case law, for the purposes herein, Defendants will refer to the hyperlinks as the devices.

2-222-311.   AAP's Rogg Ans., no. 4; SAC Exhibit 1A [ECF No. 101-1], pgs. 13-23; SAC

Exhibit 4 [ECF No. 101-6], pgs. 19, 71, 87, 89, 99, 110, 114, 118; SAC Exhibit 11 [ECF No.

101-13], Pg. 3.

Despite six of the 29 AAP photos depicted in the Vimeo video also appearing in Vesta

Exhibit 4, unlike the depictions of photos in Vesta Exhibit 4 and the photos to which DB Link 1[4]

leads, none of the 29 AAP photos depicted in the video home tour include AAP's copyright

protection language, such that if one were to screenshot an image from the video, no copyright

protection language would appear in the lower left corner.  SAC Exhibit 4 [ECF No. 101-6];

Exhibit 11 [ECF No. 101-13]., pg. 3; 7.22.20 LRG to Longacre email [ECF No. 81-8], pg. 2.

Because there conclusive evidence that none of the Works Vesta used were sourced from

the Works to which DB Link 3 or the Vimeo Link lead, Mr. Ross and Tillinghast are entitled to

summary judgment on Count III as a matter of law with regard to any alleged copyright

infringement committed by Vesta.  *See MGM Studios Inc.,* 545 U.S. at 940.

### 2.   *The requisite intent on the part of Mr. Ross or Tillinghast does not exist*

Distribution of a device capable of infringing uses, without more, is not enough to prove

intent in inducement of infringement claims.  *Id.* at 934-35.  Evidence that "goes beyond a

product's characteristics or the knowledge that it may be put to infringing uses, and shows

statements or actions directed to promoting infringement" is required.  *Id.* at 935. "Affirmative

steps" exhibiting "purposeful, culpable expression and conduct" are required. *Id.* at 936-37.

Examples of "affirmative steps" include: "advertising an infringing use or instructing how to

engage in an infringing use, show[ing] an affirmative intent that the product be used to infringe,

---

[4] DB Link 1 (https://www.dropbox.com/sh/ci5cjd4k9rx0gsb/AAAHfFPM3c3w_0Q-9-3naZpKa?dl=0) was sent to Vesta by Leibowitz Realty Group ("LRG") on July 22, 2020, a week prior to Mr. Ross' to Ms. Longacre.  *See* LRG's 7.22.20 email to Ms. Longacre [ECF No. 81-8].  All of the photos to which DB Link 1 leads contain AAP's copyright language in white font in the lower left corner of the photos.  *See id.*

and a showing that infringement was encouraged." *Id.* at 936 (citation omitted). *See also e.g., Haworth Inc. v. Herman Miller Inc.,* 37 USPQ 2d 1080, 1090 (WD Mich. 1994) (inducement liability where the defendant "demonstrate[d] and recommend[ed] infringing configurations" of its product); *Sims v. Mack Trucks, Inc.,* 459 F. Supp. 1198, 1215 (E.D. Pa. 1978) (imposing inducement liability when the use "depicted by the defendant in its promotional film and brochures infringes the . . . patent").

AAP claims, "Ross and Tillinghast made affirmative steps to foster infringement of third parties by distributing the Works to third parties…knowingly without authorization to induce third parties to display the works." *See* SAC [ECF 101], ¶ 56-57.  The aforementioned case law is clear in that "distributing" the Works to Vesta via the Links in Mr. Ross' July 29, 2020 emails to Ms. Longacre, without more, is insufficient to satisfy the "affirmative steps" intent element of an inducement claim. *See MGM Studios, Inc.,* 545 U.S. at 936-37.

Considering neither Mr. Ross nor Tillinghast ever advertised, recommended, encouraged, demonstrated or promoted to Vesta how DB Link 3 or the Vimeo Link could be used to infringe AAP's copyrighted Works, Mr. Ross and Tillinghast are entitled to summary judgment on Count III as a matter of law with regard to any alleged copyright infringement committed by Vesta. *See id.  See also* Ross Affidavit, ¶ 16; Tillinghast Affidavit, ¶ 13.

WHEREFORE, Defendants, LARRY ROSS and TILLINGHAST HOLDINGS, INC. respectfully request that the Court grant the instant Motion in all respects, and issue an order dismissing Count I, II and III of the Second Amended Complaint, with prejudice, and awarding Defendants their fees and costs for having to defend against AAP's claims in this lawsuit, as well as any further relief the Court deems just.

*Certificate of Service on Following Page*

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of Tillinghast Holdings, LLC's and Larry Ross' Motion for Final Summary Judgment was electronically filed in and served via electronic mail through the CM/ECF Filer upon: Craig Anthony Wirth, Esq., SRipLaw 21301 Powerline Rd., Suite 100, Boca Raton, FL 33433, craig.wirth@sriplaw.com (*Counsel for Plaintiff*) on February 9, 2023.

Respectfully submitted,

*s/John R. Whittles*
JOHN R. WHITTLES
Florida Bar Number 0178802
ELIZABETH F. OLDS
Florida Bar Number 109942
MATHISON WHITTLES, LLP
5606 PGA Blvd., Suite 211
Palm Beach Gardens, Florida 33418
Tel.: (561) 624-2001
Fax: (561) 624-0036
(jwhittles@mathisonwhittles.com)
(ablair@mathisonwhittles.com)
*Attorneys for Defendants, Tillinghast and Ross*
