IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER:  9:21-cv-81777

AFFORDABLE AERIAL PHOTOGRAPHY,
INC.

      Plaintiff,

v.

SHOWROOM INTERIORS, LLC, d/b/a
VESTA, et al.

      Defendants.

_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT**

Defendants, LARRY ROSS ("Mr. Ross") and TILLINGHAST HOLDINGS, LLC ("Tillinghast"), hereby file this Reply to Plaintiff, AFFORDABLE AERIAL PHOTOGRAPHY, INC.'S ("AAP"), Response in Opposition to Defendants' Motion for Final Summary Judgment [D.E. 127], and in support thereof state as follows:

**I.   DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT DOES NOT VIOLATE LOCAL RULE 56.1(e)**

AAP asserts that Defendants' Motion for Final Summary Judgement (ECF No. 114) ("Defendants' MSJ") violates Local Rule 56.1(e) because they previously filed a Motion for Partial Summary Judgment [ECF No. 88]. Local Rule 56.1(e) specifically states, "Filing and service of multiple motions for *partial* summary judgment is prohibited, absent prior permission of the Court" (emphasis added). Defendants' MSJ is not a second partial summary judgment motion that triggers the operation of Rule 56.1(e), as it seeks resolution of all issues in the case, not just some.

AAP claims the facts of this case "track identical" with the facts in *Montgomery v. Great Am. Assurance Co.,* No. 12-20503-CV, 2013 WL 12093808, at *4 (S.D. Mar. 5, 2013), in which

the court dismissed a motion for summary judgment on the basis of Rule 56.1(e), and consequently, Defendants' MSJ should be as well.  *See* AAP's MSJ Response [ECF No. 127], pg. 4.

The problem is, the facts in *Montgomery* do not "track identical" to the facts of this case. In *Montgomery*, the plaintiff accused of violating Rule 56.1(e) claimed "its second motion sought summary judgment on 'all issues' in the case," and as such, plaintiff had not filed "multiple motions for partial summary judgment."  *See* 2013 WL 12093808, at *4.  The Court did not find merit in the plaintiff's argument because "Plaintiff's second Motion is effectively a motion for partial summary judgment," because it presented argument on all issues except one. *See id.*  Unlike the plaintiff's motion for summary judgment in *Montgomery*, Defendants' MSJ presents arguments on all of the claims AAP asserts against Defendants, such that if the court were to grant it in its entirety, AAP's entire lawsuit against Defendants would be dismissed.  Accordingly, *Montgomery* is distinguishable from the instant action and Defendants' MSJ is not a motion for partial for summary judgment that triggers Rule 56.1(e).

    **II.**     **AAP HAS NOT IDENTIFIED ANY MATERIAL FACTS IN DISPUTE THAT PRECLUDE DEFENDANTS' MSJ FROM BEING GRANTED.**

AAP claims that its "Statement of Material Facts in support of Summary Judgment (ECF No. 112) identically tracks the language of the Joint Statement of Undisputed Facts," which is ECF No. 113.  This is false, as there are differences between the two documents.  First, Paragraphs 9 and 10 of AAP's Statement of Material Facts [ECF No. 112] ("AAP's MSJ Facts") are not included in the Joint Statement of Undisputed Facts [ECF No. 113] (the "Joint Statement of Facts"), at all. Second, Paragraph 12 of AAP's MSJ Facts [ECF No. 112] states, "Ross and Tillinghast contracted with Showroom Interiors, LLC to stage the home. **As part of the consideration for that contract, Ross and Tillinghast gave Vesta "Absolute and unlimited rights to use any photography taken of the home and inventory**." (ECF No. 81-7; Ross Tr. 30:3-10)." (Emphasis added.)

However, paragraph 10 of the Joint Statement of Facts [ECF No. 113] simply states, "Ross and Tillinghast contracted with Showroom Interiors, LLC to stage the home. (ECF No. 81-7; Ross Tr. 30:3-10)." Also contrary to AAP's claims, Defendants, in their Statement of Undisputed Facts [D.E. 130] ("Defendants' MSJ Facts") do not dispute any of the facts in the Joint Statement of Facts [ECF No. 113], nor does AAP identify any specific facts that are contrary to the facts therein.

AAP also claims the two most significant points of "dispute" between AAP and Defendants are whether or not Defendants profited or gained monetarily from its provision of DB Link 3 and the Vimeo Link (collectively, the "Links") to Vesta, and which photos in Vesta Exhibit 4 contained copyright notices on them. With regard to the first issue, the only record evidence AAP highlights to counter Defendants' assertion that it did not receive any profit, compensation or payment from Vesta for the Links, and rights to AAP's photos did not impact the cost of Tillinghast's contract with Vesta, is the Vesta Contract. AAP does not present testimony from either Vesta or Mr. Ross stating that AAP's photos impacted the cost of the Vesta Contract, and no portion of the Vesta Contract states that AAP's photos impacted the cost of the Vesta Contract.

As to the second issue, of the photos highlighted by AAP in Vesta Exhibit 4 as not having copyright protection language on them[1], only three – 12251 Tillinghast Cir_009, 030 and 049 – were actually addressed by Defendants because AAP is not pursuing any claims related to the remaining photos. *See* Joint Statement of Facts [ECF No. 113], ¶ 7; Defendants' MSJ Facts [ECF No. 130], ¶ 14, 32. Further, each of those three photos – 12251 Tillinghast Cir_009, 030 and 049 – appear elsewhere in Vesta Exhibit 4 *with copyright protection language in their lower left corners*. *See* ECF No. 101-6, pg. 17 (049), 71 (009), 87 (049), 99 (030), 110 (049), 111 (049).

---

[1] AAP identifies these photos as "(ECF No. 101-6), p. 2, 4, 17 (top two works), 19, 22, 44, 65, 66, 67, 124." *See* AAP Response to Defendants' MSJ Facts [ECF No. 128, ¶ 14, 32].

### III. MR. ROSS REMAINS ENTITLED TO FINAL SUMMARY JUDGMENT ON AAP'S DIRECT INFRINGEMENT CLAIM

AAP claims that the cases Defendants rely upon for their hyperlinking argument focus "on the *display* right" (emphasis in original). *See* AAP's MSJ Response, pg. 4. While many of the cases cited by Defendants do focus on the display right, the primary case relied upon by Defendants, *Pearson Educ., Inc. v. Ishayev*, 963 F. Supp. 2d 239 (S.D.N.Y. 2013), which focuses on the distribution right, explicitly states that the hyperlinking principles it discusses apply to all five rights enumerated by 17 U.S.C. §106, not just the display right, and this is because a hyperlink is not an "copy" of copyrighted content. 963 F. Supp. 2d at 250-51 (emphasis added).[2]

AAP then shifts the focus of its argument and contends Mr. Ross committed direct copyright infringement when he viewed the Works depicted on the websites to which DB Link 3 and the Vimeo Link lead because "viewing the works…created local copies" on his computer. Defendants do not dispute the case law cited by AAP in support of this proposition. However, at no point in time in this case has AAP made a claim for direct copyright infringement against Mr. Ross based upon his simply viewing the Works depicted on the websites to which the Links lead. *See* Second Amended Complaint ("SAC") [ECF. No. 101]. AAP specifically pled, "Defendants

---

[2] "**As a matter of law, sending an email containing a hyperlink to a site facilitating the sale of a copyrighted work does not itself constitute copyright infringement**. A hyperlink (or HTML instructions directing an internet user to a particular website) is the **digital equivalent of giving the recipient driving directions to another website** on the Internet. **A hyperlink does not itself contain any substantive content**; in that important sense, a hyperlink differs from a zip file. **Because hyperlinks do not themselves contain the copyrighted or protected derivative works, forwarding them does not infringe on any of a copyright owner's five exclusive rights under § 106**. *See MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 U.S. Dist. LEXIS 47313, 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012) ("Because the actual transfer of a file between computers must occur, merely **providing a 'link' to a site containing copyrighted material does not constitute direct infringement of a holder's distribution** right."), *adhered to on reconsideration*, 2012 U.S. Dist. LEXIS 100492, 2012 WL 2929392 (S.D.N.Y. July 18, 2012); *see also Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1161 (9th Cir. 2007) (holding that **providing HTML instructions that direct a user to a website housing copyrighted images "does not constitute direct infringement of the copyright owner's display rights"** because "providing HTML instructions is not equivalent to showing a copy"); *Arista Records, Inc. v. Mp3Board, Inc*., No. 00 CIV. 4660(SHS), 2002 U.S. Dist. LEXIS 16165, 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (holding, on motion for summary judgment, that supplying hyperlinks to unauthorized, infringing files is, alone, insufficient to establish infringement)." 963 F. Supp. 2d at 250-51 (emphasis added).

Ross and Tillinghast committed copyright infringement of the Works **by distributing the Works to subcontractors**, and induced Vesta, Fab, and JDLA to commit copyright infringement **as evidence [sic] by the documents attached hereto as Exhibit 11 and 12**." *See* id., ¶ 31.  No portion of this statement, or any other part of the Second Amended Complaint, or even AAP's Motion for Partial Summary Judgment [ECF No. 111] even remotely indicates that AAP intended hold Mr. Ross liable for direct infringement for simply viewing the Works on his computer.  This is made more apparent by the Joint Statement of Facts [ECF No. 113], in which the parties agree that they only AAP photos at issue in this litigation are those that are depicted on the websites to which the Links lead.  *See* ECF No. 113, ¶ 7, 11, 12.  If AAP is at liberty to make this claim without first amending its Second Amended Complaint, *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006), held that the automatic copying that occurs on one's computer upon viewing a website is fair use and not direct copyright infringement:

> P10 argues that merely by viewing such websites, individual users of Google search make local "cache" copies of its photos and thereby directly infringe through reproduction. The Court rejects this argument. Local browser caching basically consists of a viewer's computer storing automatically the most recently viewed content of the websites the viewer has visited. **It is an automatic process of which most users are unaware, and its use likely is "fair" under 17 U.S.C. § 107**. *But cf. Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.*, 75 F.Supp.2d 1290 (D. Utah 1999). **Local caching by the browsers of individual users is noncommercial, transformative, and no more than necessary to achieve the objectives of decreasing network latency and minimizing unnecessary bandwidth usage (essential to the internet). It has a minimal impact on the potential market for the original work, especially given that most users would not be able to find their own local browser cache, let alone locate a specific cached copy of a particular image.** That local browser caching is fair use is supported by a recent decision holding that Google's own cache constitutes fair use. *Field v. Google, Inc.*, F. Supp. 2d 1106, NO. CV-S-04-0413, 2006 WL 242465 (D. Nev. Jan. 19, 2006). If anything, the argument that local browser caching is fair use is even stronger. Whereas Google is a commercial entity, individual users are typically noncommercial. Whereas Google arranges to maintain its own cache, individual users typically are not aware that their browsers automatically cache viewed content. Whereas Google's cache is open to the world, an individual's local browser cache is accessible on that computer alone.

*See* 416 F. Supp. 2d at 852, fn. 17.  Accordingly, any automatic copying of images to Mr. Ross' computer upon his viewing of them on the websites to which the Links lead, does not constitute copyright infringement because said use is a "fair use" under 17 U.S.C. 107.

Next, AAP alleges that after Mr. Ross viewed the Works on the webpages to which DB Link 3 and the Vimeo Link lead and local copies were created in his computer as a result of viewing them, "he sent the photos to be viewed by others, distributed them." *See* AAP's MSJ Response, pg. 5.  No portion of either email Mr. Ross sent to Ms. Longacre contain any photo images, zip files or photo image files, nor has AAP presented any record evidence indicating otherwise.  *See* Joint Statement of Facts [ECF No. 113], ¶ 11, 12.  All that is included in Mr. Ross' emails to Ms. Longacre are hyperlinks – DB Link 3 and the Vimeo Link – which do not constitute copies of any of AAP's Works.  *See Pearson Educ., Inc.*, 963 F. Supp. 2d at 250-51 ("A hyperlink does not itself contain any substantive content…**hyperlinks do not themselves contain the copyrighted or protected derivative works**, forwarding them does not infringe on any of a copyright owner's five exclusive rights under § 106.").

AAP attempts to distinguish *Pearson Educ., Inc.*, but instead displays a fundamental misunderstanding of the opinion when states, "the *Pearson* Court would have granted Summary Judgment if the Defendant in that case admitted creating a copy prior to the distribution of the hyperlink." *See* AAP's MSJ Response, pg. 6-7.  This is a wholly inaccurate reading of the case. In *Pearson Educ., Inc.*, the court stated:

> Plaintiffs' motion for summary judgment, as to three of the instructors' solutions manuals, cannot be granted for a separate reason. Those manuals were accessed by Siewert through hyperlinks emailed to her by Ishayev, as opposed to Ishayev's having attached digitally copies of those manuals to the emails he sent to Siewert. Such action, **without more**, is insufficient to establish an act of infringement. **A question of fact remains as to whether Ishayev engaged in infringement by other means,** *i.e.***, by uploading the infringing material to filesonic.com**.

963 F. Supp. at 250 (emphasis added).  Filesonic.com is the website to which the hyperlinks at issue led.  *See id.* at 251 ("The hyperlink [the defendant] sent to Siewert directed her to filesonic.com, a file sharing website on which she could access electronic copies of three of plaintiffs' manuals, but, like the toolbars in *MyPlayCity*, the link was not itself a digital copy of

any of the protected materials, and did not contain a copy of any of those materials."). In other words, the *Pearson* court held the summary judgment failed for hyperlinked works, but if the defendant uploaded to content onto the website to which the hyperlinks led (Filesonic.com), such that he was not only providing an address to where the content could be found, but actually uploaded the content at that address as well, making it available for download, the defendant could be held liable for infringement. Here, it is undisputed that neither Defendant uploaded the AAP photos to the Dropbox.com webpages to which DB Links 1, 2 or 3 lead, nor did they upload the video tour to which the Vimeo Link leads to Vimeo's website. *See* Defendants' MSJ Facts [ECF No. 130, ¶ 26, 34]; AAP's Response to Defendant's MSJ Facts [ECF No. 128, ¶ 26, 34].

Lastly, AAP's policy argument in favor of this District declining to follow the voluminous case law from around the Country stating that hyperlinking, without more, does not constitute direct copyright infringement, comparing copyright infringement claims to prosecution of child pornography charges, is daft. This is because the standard for successfully prosecuting child pornography charges (providing "access" and "facilitating transportation"), with good reason, is much more liberal than the copyright infringement standard, which requires actual copying of protected content in order for infringement to occur. *See Pearson Educ., Inc.,* 963 F. Supp. 2d at 251. AAP is comparing apples to oranges and has not cited any cases which state the copyright infringement standard is, or should be, akin to the standard for prosecuting child pornography cases. Meanwhile, cases like *Pearson,* 963 F. Supp. 2d at 250-51, *Perfect 10 v. Amazon,* 508 F.3d at 1161 and *MyPlayCity,* 2012 U.S. Dist. LEXIS 47313, at *12 make clear that, simply providing access to infringing material is not enough to prove direct copyright infringement – more is required. As such, the Court should decline AAP's invitation to make the copyright infringement standard as wide as the child pornography prosecution standard.

### IV. AAP HAS NOT DEFEATED MR. ROSS' FAIR USE ARGUMENT

AAP claims the first fair use factor (purpose and character of the work) weighs against Mr. Ross because his use of the Links was commercial and not transformative. The only support AAP provides for the former is the Vesta Contract. However, AAP did not present any record evidence that indicates the contract price would have been different had the photography term not been included; that the term impacted the contract price; that Mr. Ross provided Ms. Longacre the Links pursuant to the photography term; or that Mr. Ross received any actual financial gain from Vesta for emailing Ms. Longacre the Links. The only evidence in the record is Mr. Ross' statements that he provided the Links to Ms. Longacre so she could see how Vesta's staging work would be depicted in materials used to sell the home, including MLS. *See* Ross Trans. [ECF No. 114-1], 35:11-19; Ross Affidavit [ECF No. 101-3], ¶ 17. AAP's claim that Mr. Ross' use was not transformative because he did not actually change or modify the photos in any way is also insufficient, because the actual modification of the photos is not necessary for the use to be deemed transformative. *See Cambridge Univ. Press v. Patton*, 769 F. 3d 1232, 1262 (11th Cir. 2014) ("Even verbatim copying 'may be transformative so long as the copy serves a different function than the original work.'" (Citation omitted.)).

AAP claims the second fair use factor (the nature of the copyrighted work) weighs in its favor because they are creative, despite AAP's own representative's testimony, and the photos themselves, which suggest otherwise. AAP also does not address the fact, but does not address the fact that the works were also previously published.

AAP's assertion the third fair use factor (amount of work used) weighs in AAP's favor ignores case law which provides that this factor has less weight when photos are involved and is deemed neutral. *See Katz v. Google Inc.*, 802 F. 3d 1178, 1183-84 (11th 2015).

Lastly, as to the fourth factor (effect of use on the work's potential market), AAP explicitly admits it "**likely would not have** licensed these Works due to privacy concerns." *See* AAP's MSJ Response, pg. 10 (emphasis added). Such an admission warrants having the fourth factor weigh in favor of Mr. Ross. *See Katz*, 802 F. 3d at 1184.

### V. TILLINGHAST REMAINS ENTITLED TO FINAL SUMMARY JUDGMENT ON AAP'S VICARIOUS INFRINGEMENT CLAIM

In an attempt to counter the lack of record evidence of a "direct financial interest" in the infringing activity, AAP asserts that "Tillinghast profited from the infringement by Ross by obtaining a more favorable term in the staging contract with Vesta." *See* AAP MSJ Response, pg. 11; *Millennium Funding, Inc.*, 576 F. Supp. 3d at 1214 (citations omitted). The only evidence AAP identifies to support this claim is the Vesta Contract. Again, there is no record evidence indicating the contract price would have been different had the photography term not been included; that the term impacted the contract price; that Mr. Ross provided Ms. Longacre the Links pursuant to the term; or that Mr. Ross received any actual financial gain from Vesta for emailing Ms. Longacre the Links. With this record, a jury cannot find that Tillinghast "profited directly from the infringing activity." *See id*.

### VI. TILLINGHAST REMAINS ENTITLED TO FINAL SUMMARY JUDGMENT ON AAP'S INFRINGEMENT INDUCEMENT CLAIM

A passive contract term that does not specifically mention works created by AAP is not the kind of "purposeful, culpable expression and conduct" that must be established in order to prevail on an inducement of infringement claim, and AAP did not cite to any cases which indicate otherwise. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005). This is particularly so when there is no evidence Mr. Ross provided either of the Links to Ms. Longacre pursuant to the Vesta Contract, or that either Defendant affirmatively advertised, instructed on or encouraged

an infringing use of the works to which each of the Links led. *See id.* at 936. All AAP points to is the Vesta Contract, which is insufficient. *Id.* at 936-37.

Furthermore, there is still no evidence Vesta used any of the works depicted on the webpages to which the Links lead on its website or social media pages, as depicted in Vesta Exhibit 4. *See* ECF No. 101-6. It is undisputed that none of the works that appear on the webpage to which DB Link 3 leads are in Vesta Exhibit 4. *See* Defendants' MSJ Facts [ECF No. 130], ¶ 25; AAP's Response to Defendant's MSJ Facts [ECF No. 128], ¶ 25. With regard to the works depicted in the video to which the Vimeo Link leads, there is no evidence in the record indicating that Vesta screenshotted images from the video and used them on its website or social media pages, as depicted in Vesta Exhibit 4. It is undisputed that Vesta received a link (DB Link 1) that leads to a webpage containing every single one of the photos that appears in Vesta Exhibit 4, with copyright protection language on each of them, from Leibowitz Realty Group, a week before Mr. Ross sent Ms. Longacre the Links. *See* Defendants' MSJ Facts [ECF No. 130], ¶ 17-20; AAP's Response to Defendant's MSJ Facts [ECF No. 128], ¶ 17-20. Evidence on the record also shows that only three of the photos at issue in this case – 12251 Tillinghast Cir_009, 030 and 049 – appear on certain pages of Vesta Exhibit 4 without any copyright protection language on them. *See* Joint Statement of Facts [ECF No. 113], ¶ 7; Defendants' MSJ Facts [ECF No. 130], ¶ 14, 32. However, each of these three photos appear on other pages of Vesta Exhibit 4 with AAP's copyright protection language on them. *See* ECF No. 101-6, pg. 17 (049), 71 (009), 87 (049), 99 (030), 110 (049), 111 (049). Under these facts, no reasonable jury would conclude that Vesta sourced the images that appear in Vesta Exhibit 4 from DB Link 3 or the Vimeo Link.

WHEREFORE, Defendants, LARRY ROSS and TILLINGHAST HOLDINGS, INC. respectfully request that the Court grant its Motion for Final Summary Judgment in its entirety,

and issue an order dismissing Count I, II and III of the Second Amended Complaint, with prejudice, and awarding Defendants their fees and costs for having to defend against AAP's claims in this lawsuit, as well as any further relief the Court deems just.

### CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of Tillinghast Holdings, LLC's and Larry Ross' Reply to ECF No. 127 was electronically filed in and served via electronic mail through the CM/ECF Filer upon: Craig Anthony Wirth, Esq., SRipLaw 21301 Powerline Rd., Suite 100, Boca Raton, FL 33433, craig.wirth@sriplaw.com (*Counsel for Plaintiff*) on March 9, 2023.

Respectfully submitted,

*s/John R. Whittles*
JOHN R. WHITTLES
Florida Bar Number 0178802
ELIZABETH F. OLDS
Florida Bar Number 109942
MATHISON WHITTLES, LLP
5606 PGA Blvd., Suite 211
Palm Beach Gardens, Florida 33418
Tel.: (561) 624-2001
Fax: (561) 624-0036
(jwhittles@mathisonwhittles.com)
(ablair@mathisonwhittles.com)
*Attorneys for Defendants, Tillinghast and Ross*