UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  21-CV-81777-AMC

AFFORDABLE AERIAL PHOTOGRAPHY, INC.,

        Plaintiff,

vs.

LARRY A. ROSS, and
TILLINGHAST HOLDINGS, LLC,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT  [ECF Nos. 111, 115]

Affordable Aerial Photography, Inc. ("AAP") sues Larry A. Ross and Tillinghast Holdings, LLC. for infringing AAP's copyrights on 40 photographs. ECF No. 101 (Second Amended Complaint); ECF No. 113, Joint Statement of Undisputed Facts ("JSF") ¶6 (40 works remain at issue after discovery). Count I alleges direct copyright infringement by Mr. Ross. Count II alleges vicarious copyright infringement by Tillinghast Holdings. Count III alleges inducement of copyright infringement against both defendants.

The Second Amended Complaint asks for (1) an injunction, (2) monetary damages, (3) attorneys' fees, (4) pre- and post-judgment interest. ECF No. 101 at 18-19. The requested monetary damages are "actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. §504." *Id*. at 19.

AAP filed a Motion for Partial Summary Judgment asking for judgment as a matter of law on liability on Counts I and II, including judgment as a matter of law against Defendants' affirmative defenses. ECF No. 111.[1] Defendants filed a Response arguing that AAP's Motion should be denied. ECF No. 122. AAP did not file a Reply.

Separately, Defendants filed a Motion for Final Summary Judgment on all counts. ECF No. 115. AAP filed an Opposition to the Motion. ECF No. 127. Defendants filed a Reply. ECF No. 132.

I have reviewed all of the relevant pleadings, including the respective Statements of Material Facts. I held oral argument on April 12, 2023. ECF No. 134. I am fully advised and this matter is ripe for decision.

For the following reasons, it is RECOMMENDED that (1) Defendants' motion for summary judgment be GRANTED and Plaintiff's motion for partial summary judgment be DENIED.

## I.    LEGAL PRINCIPLES

The legal standard on cross-motions for summary judgment is the same standard applied when only one party files a summary judgment motion. *See Am.*

---

[1] AAP's motion prays for "Partial Summary Judgment as to liability." ECF No. 111 at 1. It argues "Summary Judgment should be granted in favor of AAP . . . and the trial can proceed on damages." *Id*. at 12. Nevertheless, the Motion does not develop any argument for summary judgment on Count III. "It is axiomatic that arguments not supported and properly developed are deemed waived.*" Beres v. Daily Journal Corp.,* 0:22-CV-60123-WPD, 2022 WL 805733, at *6 n.6 (S.D. Fla. Mar. 8, 2022) (J. Dimitrouleas) (citations omitted). Therefore, I do not consider whether AAP is entitled to partial summary judgment on Count III.

*Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). That

standard is well-settled:

> Summary judgment is authorized only when, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *See Adickes*, 398 U.S. at 157.
>
> The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

*Those Certain Underwriters at Lloyd's Subscribing to Policy No. 25693JB v. Capri of*

*Palm Beach, Inc.*, 932 F. Supp. 1444, 1446 (S.D. Fla. 1996), *aff'd sub nom. Certain*

*Underwriters v. Capri*, 128 F.3d 732 (11th Cir. 1997) (J. Moreno).

> The moving party's burden on a motion for summary judgment "depend[s] on whether the legal issues ... are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (emphasis in original) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. In State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). "For issues, however, on which the non-movant would bear the burden of proof at trial, 'the moving party is not required to support its

3

motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility.'" *Id.* (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1437–38).

*Nunez v. Coloplast Corp.*, No. 19-CV-24000, 2020 WL 2561364, at *1 (S.D. Fla. May 20, 2020) (J. Singhal). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

To summarize, to prevail on their respective motions, each movant must first show that the relevant facts are undisputed. Then, the party with the burden of proof at trial must show that, viewing the undisputed facts in the light most favorable to the non-moving party, it is entitled to judgment as a matter of law. *See Adickes*, 398 U.S. at 157; *see also Certain Underwriters*, 932 F. Supp. at 1446.

Federal Rule of Civil Procedure 56 and Local Rule 56.1 mandate the procedure for pleading (and responding to) a Motion for Summary Judgment. Rule 56(c)(1) states:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); Fed. R. Civ. P. 56(e), SDFL L.R. 56.1(c), (d). "The proper course . . . is for a district court to disregard or ignore evidence relied on by the respondent — but not cited in its response to the movant's statement of undisputed facts." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

5

Fed. R. Civ. P. 56(e). A factual assertion that is not properly disputed may be deemed admitted "provided that: (i) the Court finds that the material fact is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." SDFL L.R. 56.1(c).

## II.   UNDISPUTED FACTS

1.      Robert Stevens is the principal photographer and owner of Affordable Aerial Photography, Inc. Joint Statement of Undisputed Facts ("JSF"). ECF No. 113 ¶1.

2.      Mr. Stevens is employed by AAP and the copyrights in all photographs he creates are owned by AAP. JSF ¶2.

3.      Mr. Ross managed Tillinghast Holdings, LLC, ("Tillinghast Holdings") which owned and renovated a house at 12251 Tillinghast Circle, Palm Beach Gardens, Florida (the "Tillinghast Residence"). Defendants' Statement of Undisputed Facts in Support of their Motion for Final Summary Judgment ("DSOMF"). ECF No. 114, ¶1.

4.      Leibowitz Realty Group ("LRG") is a real estate brokerage firm hired to sell the Tillinghast Residence.  DSOMF ¶4.

5.      LRG hired Mr. Stevens of AAP to photograph the Tillinghast Residence. DSOMF ¶5.

6.      The photographs originally were intended to be used to market the Tillinghast Residence for sale through several online and print media. DSOMF ¶6;

Defendants' Statement of Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment ("DSOF"), ECF No. 121, ¶16.

7.      Mr. Stevens took approximately 245 photographs of the Tillinghast Residence ("the Works"), which were later registered with the Copyright Office. JSF ¶4; DSOMF ¶10.

8.      The Works can be divided into three categories:

    a. 52 works registered on September 29, 2020, via Copyright Registration Certificate No. VA 2-222-311 (ECF No. 76-2) (the "September 2020 Works");

    b. 192 works registered on February 5, 2021, via Copyright Registration Certificate No. VA 2-247-343 (ECF No. 76-11, pgs. 2-8) (the "February 2021 Works"); and

    c. 10 works registered on various dates via various Copyright Registration Certificates spanning July 15, 2015, through March 26, 2020 (ECF No. 76-11, pgs. 9-30) (the "Miscellaneous Works").

JSF ¶5.

9.      On or about May 27, 2020, Mr. Ross and Tillinghast Holdings contracted with Showroom Interiors, LLC d/b/a Vesta Home Furnishings ("Vesta") to stage the Tillinghast Residence for prospective buyers. JSF ¶10; ECF No. 81-7 at 4.

10.     Paragraph 13 of the contract between Tillinghast Holdings and Vesta said, "Homeowner agrees that VESTA HOME has the absolute right to use any photography taken of the home and inventory." ECF No. 81-7 at 2.

11.     The Tillinghast Property was listed on the Multiple Listing Service (MLS) in or about June 2020. ECF No. 114-3 ¶3.

12.     The June 2020 MLS listing included some of the Works. ECF No. 114-2 at 15; DSOF ¶22; DSMOF ¶15.

13.     AAP never licensed its photographs of the Tillinghast Property to Defendants and AAP has no contractual relationship with Mr. Ross or Tillinghast Holdings. JSF ¶8.

14.     Mr. Ross and Tillinghast Holdings received access to the Works at issue in this case. JSF ¶9.

15.     Neither Mr. Ross nor Tillinghast Holdings made any derivative works from the Works. DSOMF ¶16.

16.     On July 29, 2020, at 4:14 p.m., Mr. Ross emailed Jenny Longacre at Vesta a link to an AAP video tour of the Tillinghast Property ("the Vimeo Link"). JSF ¶11.

---------- Forwarded message ---------
From: **Larry Ross** <afo99@mac.com>
Date: Wed, Jul 29, 2020 at 4:14 PM

Case 9:21-cv-81777-AMC   Document 81-5   Entered on FLSD D

Subject: Fwd: Updated Video Tour - Old Palm
To: Jenny Longacre <jenny@vestahome.com>

https://vimeo.com/rspfl/review/431646621/1153077a9d

JSF ¶11; ECF No. 81-5 at 2-3; DSOMF ¶29.

17.     The Vimeo Link connects to a video of the Tillinghast Property that includes 29 AAP copyrighted photos ("the Video Tour"):

> a. Eight of the February 2021 Works: 21 12251 Tillinghast Cir_002, 010, 014, 017, 022a, 96, Edit5_145, Edit5_159, and
>
> b. Twenty-one of the September 2020 Works: Tillinghast Cir_009, 012, 015, 017, 018, 030, 049, 051, 053, 057, 111, 112, 115-119, 121, 122, 125, 130. DSOMF ¶30.

18.     None of the Works depicted in the Video Tour include AAP's copyright protection language in their lower left corners, such that if one were to screenshot an

image from the video, no copyright protection language would appear in the lower left corner.  DSOF ¶28; DSOMF ¶32.

19.    Neither Mr. Ross nor Tillinghast created or uploaded the Video Tour to Vimeo's website.  DSOMF ¶34; DSOF ¶30.

20.    Neither Mr. Ross nor Tillinghast has, nor have they ever had, the ability to control or modify the Vimeo.com webpage to which the Vimeo Link leads.  DSOMF ¶35; DSOF ¶31.

21.    Neither Mr. Ross nor Tillinghast owns or controls the server that hosts the webpage to which the Vimeo Link leads, nor have they ever.  DSOMF ¶36; DSOF ¶32.

22.    On July 22, 2020, Andrew Leibowitz of LRG emailed Ms. Longacre: "Hi Jenny, the first link is the photo's [sic] of the house staged the second link is the house vacant but has the exteriors. Thought you might need some exteriors front and back. Let me know if you need anything else."

**From:** Andrew Leibowitz <aleibowitz@yahoo.com>
**Date:** July 22, 2020 at 8:05:35 AM EDT
**To:** Jenny Longacre <jenny@vestahome.com>
**Subject: 12251 Tillinghast Circle**


Hi Jenny,

The first link is the photo's of the house staged the second link is the house vacant but has the
exteriors. Thought you might need some exteriors front and back.

Let me know if you need anything else.
Thanks.

Hope all is well.

Stay safe!


     Please see the link below for the photos. The updated Video Tour will be sent on
     Monday. Let us know if you have any questions!

     Photos Link: https://www.dropbox.com/sh/ci5cjd4k9rx0gsb/AAAHfFPM3c3w_0Q-
     9-3naZpKa?dl=0


     **Photos**
     **Link: https://www.dropbox.com/sh/szf3db84mmtdfo5/AACbkeYbdEkiBMMu0zShFOBla?**
     **dl=0**


Regards,

Andrew

Andrew Leibowitz
Leibowitz Realty Group
www.leibowitzrealty.com
561-262-0722(cell)
561-627-5100(off)
4867 PGA Blvd
Palm Beach Gardens, FL, 33418

DOSMF ¶17.

> 23.     LRG's email to Ms. Longacre included two Dropbox.com hyperlinks —
> DB Link 1 and DB Link 2. DSOMF ¶18.

> 24.     DB Link 1 leads to a webpage containing 77 of the September 2020
> Works, all of which include AAP's copyright protection language, in white font, in the
> lower left corner.  DSOMF ¶19.

> 25.     Neither Mr. Ross nor Tillinghast ever sent DB Links 1 or 2 to
> Ms. Longacre, or anyone at Vesta. DSOMF ¶21.

> 26.     On July 29, 2020, at 1:53 p.m., Mr. Ross emailed Ms. Longacre a
> third Dropbox link — DB Link 3:

---------- Forwarded message ---------
From: **Larry Ross** <afo99@mac.com>
Date: Wed, Jul 29, 2020 at 1:53 PM
Subject: Fwd: Yesterday's photos , new pool shots
To: Jenny Longacre <jenny@vestahome.com>

We will be swapping some of these for similar shots in the MLS ..

Photos
Link: https://www.dropbox.com/sh/hkega0ucta2w3
mt/AAD7YQ3qM_jNWzMR4LiErAKwa?dl=0

JSF ¶12; ECF No. 85-6; DSOMF ¶23.

27.     DB Link 3 leads to a webpage containing 22 of the September 2020 Works: 12251 Tillinghast Cir_111- 132. DSOMF ¶24.

28.     Neither Mr. Ross nor Tillinghast uploaded the Works to the Dropbox.com webpages to which DB Links 1, 2 or 3 lead. DSOMF ¶26; DSOF ¶24.

29.     Neither M r. Ross nor Tillinghast has ever had the ability to control or modify the Dropbox.com webpages to which DB Links 1, 2 or 3 lead. DSOF ¶25; DSOMF ¶27.[2]

30.     Neither Mr. Ross nor Tillinghast Holdings owns or controls the server(s) that host the webpages to which DB Links 1, 2 or 3 lead, nor have they ever. DSOMF ¶28; DSOF ¶26.

31.     Ms. Longacre did not request any of AAP's photos, the Dropbox Link, or the Vimeo Link from Mr. Ross. DSOF ¶33.

32.     Vesta published 42 of the Works on its website and social media pages. DSOF ¶¶17-19; DSOMF ¶12.

---

[2] Plaintiff purports to dispute this fact, but the cited material is not contradictory.

33.     All 42 of these Works are accessible via DB Link 1. DSOMF ¶20.

34.     Vesta did not republish any of the 22 Works to which DB Link 3 leads. DSOMF ¶25; DSOF ¶23.

35.     Vesta republished six of the September 2020 Works that were part of Video Tour: 12251 Tillinghast Cir_009, 012, 015, 017, 030, and 049. DSOMF ¶31; DSOF ¶27.

36.     Nine of the Works as republished by Vesta display AAP's copyright protection language in the lower left corner of the photo.  DSOMF ¶14; DSOF ¶21.

37.     Other Works republished by Vesta do not display copyright protection language. ECF No. 101-6 (portions cited in ECF No. 128 ¶14).

38.     Mr. Stevens did not ask LRG where the Works would be published; he assumed "they're going to go on all the home search engine sites; Realtor.com, the Zillows, the Trulias of the world," and at that point they are available to "millions of people." DSOMF ¶41.

## III.    DISCUSSION

### A.  The Second Amended Complaint

Count I of the Second Amended Complaint alleges that Mr. Ross directly infringed AAP's copyright for 40 Works.[3] Count II alleges that Tillinghast is

---

[3] The parties have stipulated, "Moving forward, the only Works at issue in this case are the 40 Works related to the hyperlinks in Mr. Ross' two July 29, 2020, emails to Jenny Longacre" — the Vimeo Link and DB Link 3. ECF No. 110 (citing ECF No. 101-13, pp. 2-4). There are 32 September 2020 Works and 8 February 2021 Works. JSF ¶¶6-7.

vicariously liable for Mr. Ross' acts of direct infringement. Count III alleges Mr. Ross (and through him, Tillinghast) induced Vesta to infringe AAP's copyrights.

### B. *Local Rule 56.1(e)*

AAP argues that Local Rule 56.1(e) prohibits Defendants from filing their Motion for Summary Judgment without leave of court. Defendants correctly respond that the Local Rule prohibits multiple motions for partial summary judgment. Here, Defendants filed one motion for partial summary judgment (ECF No. 88) and then the pending motion for final summary judgment. Local Rule 56.1(e) does not bar Defendants' pending motion.

### C. *Count I*

#### 1. Parties' Arguments

 AAP moves for summary judgment on liability on Counts I and II.  It argues that Defendants copied the Works because Mr. Ross sent Ms. Longacre "emails contain[ing] the direct links to 40 of AAP's Works." ECF No. 111 at 5. AAP's Motion does not argue any other theory of copying or direct infringement.

In Response, Defendants argue that AAP is not entitled to summary judgment on Count I because merely emailing a hyperlink is not copyright infringement. ECF No. 122 at 3-8. Alternatively, they argue that any copying of the Works by Mr. Ross was fair use. *Id.* at 8-15.

Separately, Defendants moved for summary judgment in their favor on these two theories. ECF No. 115 at 3-8. In its Opposition to Defendants' motion, AAP argued two additional theories of infringement: (1) Mr. Ross used the hyperlinks to

view the Works and the Video Tour, which created copies on his local computer, and (2) Mr. Ross used copyrighted Works to create a brochure. ECF No. 127 at 4-6.

In Reply, Defendants argued that the Second Amended Complaint does not allege Mr. Ross infringed AAP's copyrights merely by creating a copy from viewing the Works online. ECF No. 132 at 4-5. They also argued that even if viewing the Works online created a local copy the copy is a fair use. *Id*. at 5.

2.  Applicable Law

"To establish a prima facie case for direct copyright infringement, a plaintiff must show (1) that he owns a valid copyright and (2) that the defendant copied constituent elements of the copyrighted work that are original." *Pronman v. Styles*, 645 F. App'x 870, 873 (11th Cir. 2016); *see also* 11th Cir. Pattern Jury Instructions (Civil) §9.1 (must prove (1) existence of valid copyright and (2) copying of original components). These elements come from the Copyright Act, which says a copyright holder "has the exclusive rights to do and to authorize . . . reproduc[ing] the copyrighted work in copies or phonorecords." 17 U.S.C. §106. A person who violates that right is liable for copyright infringement. 17 U.S.C. §501(a).

The consistent theme is that an infringer must "copy" the protected work. The Copyright Act defines "copies" as: "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. §101. The Copyright Act then explains: "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy

15

or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.*

### 3. Hyperlinks

Forwarding a hyperlink is not an act of copyright infringement. Sending a hyperlink does not, by itself, copy anything. Copies of the Works existed on the computer server that hosted the Dropbox and/or the Vimeo video. A person with the proper access link could view them, download them, or print them. The hyperlink merely provided access. It did not contain a copy. *See Pearson Educ., Inc. v. Ishayev*, 963 F. Supp. 2d 239, 251 (S.D.N.Y. 2013) (hyperlink contains no substantive content and no copy of copyrighted content on the linked site); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007) (providing HTML instructions to third party server does not display a copy of copyrighted material on that server).

An analogy from the non-digital world shows this distinction. Assume physical copies of copyrighted photographs were in a locked box. A non-licensee gets the key to the box and gives it to a third party. The third party then opens the box and makes copies of the photographs. The key gave the third party access to the photographs. But, the non-licensee providing the key did not create a new copy of the photographs. *Accord Pearson*, 963 F. Supp. 2d at 250-51 (hyperlink "is the digital equivalent of giving the recipient driving directions to another website on the internet."); *see also Perfect 10*, 508 F.3d at 1161 (providing HTML address "raises only contributory

liability issues, and does not constitute direct infringement of the copyright owner's display rights.")

Here, Mr. Ross provided the key (hyperlink) to the locked container (Dropbox). He did not make any copies. Providing the hyperlink was not an act of direct infringement as alleged in Count I.

### 4. Viewing the Works

AAP next argues that Mr. Ross admitted viewing the Works, which necessarily means that he created a copy of the Works in the local RAM memory of his computer. AAP's Opposition to Defendants' motion says, "First, the links that were distributed by Mr. Ross were prepared by AAP and sent to its licensee, Leibowitz Realty Group. Mr. Ross viewed these Works, which created copies. Viewing the Works, which Ross admits he did, created local copies." ECF No. 127 at 5 (citing Ross Deposition, ECF No. 111-2, 34:17)). AAP also argues, without citation to the record, "Ross also admitted to viewing the video tour linked in his e-mail, which again, created a local copy on his computer. That is, Ross confirmed he viewed the Works which created copies, and that he sent the photos to be viewed by others, distributed them." ECF No. 127 at 5.

There are two fatal flaws in this argument. First, in the cited portions of his deposition, Mr. Ross did not admit to viewing the Works or the Video Tour during the time period alleged in the Second Amended Complaint. Second, there is no evidence in the record to support the factual conclusion that opening an online file creates a copy in RAM memory.

17

Mr. Ross did not admit to seeing the Works before this litigation began. The portion of his deposition that AAP cites for this fact begins with Mr. Ross being shown the July 29 email to Ms. Longacre containing DB Link 3. He is asked if he has seen the email before. He says, "No." Counsel then clicks on DB Link 3 and the following colloquy happens:

Q:    Are you seeing this now?

A:    Yes.

Q:    And does it say "12251 Tillinghast Circle, Part 5" at the top?

A:    Yes.

Q:    And is this --- are these photos of the Tillinghast house that is the subject of this – of this litigation?

A:    Yes.

Q:    Okay. And do you recognize these as Affordable Aerial Photography photos?

A:    No.

Q:    Sorry, I'm going to try to make this a little bigger so you can see copyright AAP at the bottom. Do you see that?

A:    I don't see AAP, no.

Q:    Okay. Well, you – you can – I'll let you look at these individually after. Your attorney has copies of these, so – now my screen is way too big. There we go. Sorry.

All right, so your testimony is you've never seen that before, correct?

A:    No, I've seen the photos.

Q:    No. I'm sorry, the email with the link?

A:    Oh, no. Never.

ECF No. 111-2 at 34-35.

The cited material does not support AAP's argument that Mr. Ross viewed the copyrighted works in 2020. Even viewed in the light most favorable to AAP, Mr. Ross is saying that he has seen the photos at some point and that he has never seen the email with the link. He is not saying he saw the photos prior to this litigation being filed.

Similarly, the deposition testimony does not prove that Mr. Ross used the Vimeo Link to view the Video Tour. In the cited portion of the deposition, he is shown the July 29 email he sent to Ms. Longacre with the Vimeo Link. The following colloquy happens:

Q;      Have you seen this email, again, produced by Vesta's counsel?

A:      No.

Q:      And this is an email from – forwarded message from Larry Ross, afo99@mac – I believe that's same day as this – yeah, July 29, 2020 – and this is a link to a video? You've never seen this e-mail?

A:      I – I know that I saw it, you know, if you're saying it was sent July 29th. But it was purely both Vesta and Downsview I would send photos to show them what was going to occur in my brochure, because I gave Vesta and Downsview credit to in – if you look at the brochure, I mention them. It's a brand that we've built and in no way would it have been for anything but to show what was going to be used in the brochure by Leibowitz.

Q:      Why, I guess, would you send Vesta this video tour of – of the property? Have you seen this video tour, I guess I should be –

A:      Yes.

Q:      -- the other question?

A:      Yeah.

Q:      Are you aware that in – within this video are, I think, approximately 30 registered photos of AAP?

A:    No. Whatever is in there is in there.

ECF No. 111-2 at 36-37. Here, again, the testimony does not say that Mr. Ross used the Vimeo Link in 2020, or that he viewed the video tour using that link at any time.

Even assuming that Mr. Ross used the links and viewed the copyrighted material online, the second fatal flaw in AAP's argument is that there is no evidence in the record of this case that opening an online file creates a copy in RAM memory. As sole support for this proposition, AAP cites and quotes from court decisions and a hornbook.

> When a person browses a website, and by so doing displays the Handbook, a copy of the Handbook is made in the computer's random access memory (RAM), to permit viewing of the material. And in making a copy, even a temporary one, the person who browsed infringes the copyright." *Intell. Rsrv., Inc. v. Utah Lighthouse Ministry, Inc.*, 75 F. Supp. 2d 1290, 1294 (D. Utah 1999). *See also MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir.1993) (holding that when material is transferred to a computer's RAM, copying has occurred; in the absence of ownership of the copyright or express permission by license, such an act constitutes copyright infringement); *Marobie–Fl., Inc. v. National Ass'n of Fire Equip. Distrib.*, 983 F.Supp. 1167, 1179 (N.D.Ill.1997) (noting that liability for copyright infringement is with the persons who cause the display or distribution of the infringing material onto their computer); *see also Nimmer on Copyright* § 8.08(A)(1) (stating that the infringing act of copying may occur from "loading the copyrighted material ... into the computer's random access memory (RAM)").

ECF No. 127 at 5. Decisions of other courts certainly can be considered for the legal principles they announce and the analytical process they employ. But, unless principles of preclusion or *res judicata* apply, decisions in other court cases cannot be used to establish underlying *facts*.

The cases AAP cites do not provide evidence that can be applied here. *Utah Lighthouse* was a request for a preliminary injunction. The court noted that it was

relying on "the arguments of counsel, *the submissions of the parties* and applicable legal authorities." 75 F. Supp. 2d at 1291 (emphasis added). I have no idea what those submissions were. The court does not cite to the evidence supporting its conclusion. It merely cites the same legal authorities cited by AAP.

In *MAI Systems*, the copyrighted work was computer software that licensees could use "for their own internal information processing." 991 F.2d at 517. To use the software on a particular computer, the licensee had to load it into the computer's RAM memory. The court held that transferring the software from a storage medium such as a portable disk into RAM memory was a "copying." It did not hold that merely opening an online file creates a local copy in RAM memory.

Similarly, *Marobie-FL* does not support the factual conclusion argued by AAP. There, copyrighted clip art images were stored on a website without authorization from the artist. The alleged infringement was that the website host — Northwest Nexus, Inc.— allowed third party Internet users to download the images to their own computers. Plaintiff alleged direct infringement by the webhost. As the court explained:

> The files on NAFED's Web Page are stored in the hard drive of Northwest's computer. According to Northwest, when the information in a requested file is sent to an Internet user, the information passes in electronic form through the Random Access Memory ("RAM") of its computer. Plaintiff claims that Northwest directly infringed its copyrights each time an Internet user downloaded one or more of the files containing plaintiff's clip art because, each time, Northwest's computer "copied" the files from its hard drive to its RAM.

*Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*, 983 F. Supp. 1167, 1172 (N.D. Ill. 1997). The issue was whether the information sent to the webhost's RAM

memory during the download was sufficiently "fixed" to be a "copy." The *Marobie-FL* Court heard evidence about how the precise system worked and how the copy was created. That evidence is lacking here.

Finally, the citation to the *Nimmer on Copyright* hornbook does not support AAP's argument. *Nimmer* stands for the proposition that copyrighted items stored in RAM memory can be infringing, but it notes that the length of time that information remains in RAM memory is an important factor in deciding whether an infringement has occurred. 2 Nimmer on Copyright §8.08[5]. It contrasted *MAI* to *Ticketmaster LLC v. RMG Techs, Inc.*, 507 F. Supp. 2d 1096 (C.D. Ca. 2007). In *Ticketmaster,* the plaintiff offered expert testimony that defendant necessarily copied pages from defendant's copyrighted website. The published opinion did not describe "the technical paths that defendant traversed, [so it is impossible to evaluate" whether "defendant retained the copyrightable content in RAM or otherwise for a period of more than transitory duration." *Nimmer*, §8.08[5]. *Nimmer* points out the importance of having a factual record to support the legal conclusion that a copy has been created in RAM memory and that it infringes a copyright. No such record exists here.

In sum, here there is no evidence in the record to support a factual conclusion that using DB Link 3 or the Vimeo Link to access and view photographs on a remote server would necessarily create a copy in Mr. Ross' local RAM memory.

5. <u>Brochure</u>

AAP argues in its Opposition to Defendants' Motion for Summary Judgment that Mr. Ross committed direct infringement by creating a brochure that included copyrighted Works. The totality of the argument is:

> Beyond the copying that occurred in the above instance, Ross further testified, and produced in discovery, a brochure he created using the Works. (ECF No. 111-2, 35:11-19). Ross testified that "he sent photos to Vesta and Downsview Kitchens to show what was going to occur in my brochure."

ECF No. 127 at 5. Notably, there is no mention of the brochure in the Statements of Material Fact, nor is there a citation to where in the record the brochure can be found.

I decline to consider this "brochure" theory of infringement. It is not asserted in the Second Amended Complaint; it was not argued in AAP's own Motion for Summary Judgment; the putative underlying facts are not included in the Statements of Material Facts. A party cannot advance a new legal theory in response to a Motion for Summary Judgment. *See, e.g., Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1229 (M.D. Fla. 2018) (citations omitted) ("A party cannot raise new arguments in support of summary judgment for the first time in a reply brief, let alone at oral argument.").

For all these reasons, summary judgment should be granted for Mr. Ross on Count I.

D. *Count II*

To prevail on Count II, AAP must prove (1) Mr. Ross directly infringed its copyright, (2) Tillinghast had the right and ability to control or supervise Mr. Ross'

infringing action and either controlled the action, or failed to exercise its right and ability to prevent the infringement, and (3) Tillinghast directly profited from Mr. Ross' infringement. 11th Cir. Pattern Jury Instruction 9.21.

Tillinghast argues it cannot be liable for vicarious infringement because (a) there was no direct infringement by Mr. Ross or (b) Tillinghast did not have a financial interest in the allegedly infringing activities. For the reasons discussed above, Mr. Ross is not liable for direct infringement, so Tillinghast cannot be vicariously liable. Summary judgment should be granted for Tillinghast on Count II.

*E.  Count III*

Defendants argue that neither of them can be liable for contributory infringement because there is no underlying infringement by Vesta traceable to them, they lacked knowledge of any infringement by Vesta, and they did not take an affirmative step beyond mere distribution. ECF No. 115 at 18-20.

AAP responds that the actionable inducement was signing a contract giving Vesta rights to AAP's photographs and then distributing the copyrighted materials to Vesta. ECF No. 127 at 13 ("Here, Ross and Tillinghast created a contract with Vesta, that encouraged Vesta to commit infringement by falsely providing them a license to the Works at issue.").

Defendants reply that a passive contract term, alone, is not a sufficient factual basis for an inducement claim and that "there is no evidence that Mr. Ross provided either of the Links to Ms. Longacre pursuant to the Vesta Contract, or that either

Defendant affirmatively advertised, instructed on or encouraged an infringing use of the works to which each of the Links led." ECF No. 132 at 9-10.

To establish contributory infringement, AAP must show (1) Vesta infringed AAP's copyright, (2) Defendants had knowledge of the infringing conduct, (3) Defendants induced, caused, or materially contributed to the infringing conduct. 11th Cir. Pattern Jury Instruction 9.20. "'Knowledge' means the alleged contributory infringer actually knew, or had reason to know, of the infringement." *Id.*

Defendants argue that the undisputed facts show that none of the images that AAP alleges support liability on Count III are traceable to them. It is undisputed that Vesta republished 42 of the Works. ECF No. 101-6; DSOMF ¶12. Vesta had three sources for these Works — DB Links 1 and 2, and the Vimeo Link.[4] All of the Works accessible from the DB Links had Copyright Management Information ("CMI"); the Works accessible from the Vimeo Link did not have CMI. So, if Vesta republished a Work with CMI on it, that Work did not come from Defendants. For the following reasons, there are disputed facts whether three allegedly-infringing Works are traceable to Defendants; there is no dispute that six Works are not traceable to Defendants.

I first clarify what images are in dispute in Count III. AAP seeks damages from Defendants for six of the Works that Vesta republished. That conclusion derives from the following undisputed facts:

---

[4] It is stipulated that DB Link 3 is not the source of any of Vesta's allegedly infringing images.

(1)     Paragraph 13 of the Second Amended Complaint (the "Works List") lists the 245 copyrighted Works (DSOMF ¶10);

(2)     Vesta's infringement allegedly induced by Defendants is contained in ECF No. 101-6 (the "Vesta Republication") (DSOMF ¶8);

(3)     There are 42 allegedly infringing images in the Vesta Republication (DSOMF ¶12);

(4)     Nine of the 42 images in the Vesta Republication are in the Works List — 12251 Tillinghast Cir_009, _012, _015, _017, _021, _026, _030, _034, and _049 (DSOMF ¶13; ECF No. 101-1)[5];

(5)     40 Works remain in dispute and are listed in Paragraph 7 of the Joint Statement of Undisputed Facts (the "Disputed Works") (JSF ¶¶ 6,7);

(6)     Images _021, _026, and _034 are not listed in Paragraph 7 of the Joint Statement of Undisputed Facts, so they are not among the Disputed Works and cannot be the basis for liability on Count III.

So, there are six Disputed Works that are part of the Vesta Republication and which could potentially support liability on Count III:  _009, _012, _015, _017, _030, and _049.

It is undisputed that three of the Disputed Works (_012, _015, and _017) contained CMI when Vesta republished them, so they did not derive from the Vimeo

---

[5] For ease of discussion, I will reference the individual images by their three-digit number.

Link. But, there is a factual dispute whether Vesta republished three images that could have come from the Vimeo Link — 12251 Tillinghast Cir._009, 030, and 049.

In Paragraph 14 of their Statement of Undisputed Facts, Defendants say, "Vesta's display of the nine Works in Vesta Exhibit 4 includes AAP's copyright protection language in the lower left corner of each photo." ECF No. 114 ¶14. In response, AAP says, "Disputed. Several of the Works displayed in Exhibit 4 to the Second Amended Complaint do <u>not</u> contain Copyright Management Information affixed to the lower left side." ECF No. 128 ¶14 (emphasis in original). Both sides cite to specific pages of the Vesta Republication. AAP does not cite to any portion of the record where _012, _015, _017, _021, _026, or _034 are republished without CMI. In reply, Defendants admit that Vesta republished _009, _030, and _049 without CMI on the pages of the Vesta Republication cited by AAP. ECF No. 131 at 1-3. They argue, however, that because these same images appear elsewhere in the Vesta Republication with CMI, no reasonable jury could conclude that the Vimeo Link was the source of the images that lacked CMI. ECF No. 132 at 10.

Combining these undisputed facts, Defendants are entitled to summary judgment on Count III for images _012, _015, _017, _021, _026, and _034 because Vesta's republication of these images cannot be traced to the links that Mr. Ross sent to Vesta. To summarize, Mr. Ross gave Vesta access to two sets of images. One through DB Link 3 and one through the Vimeo Link. These six images that Vesta republished and that AAP claims are the basis for Count III all contained CMI. The parties have stipulated that none of the images derived from DB Link 3. These images

could not have derived from the Vimeo Link because the images in the Video Tour did not contain copyright protection information. So, unless Vesta *added* copyright protection language to images that derived from the Vimeo Link (and there is no evidence that it did), Defendants cannot have contributed to Vesta's infringement.

For the remaining images, Defendants argue that they lacked the knowledge required for contributory infringement and/or that they did not commit a sufficient act in furtherance of infringement. As the Supreme Court has explained, "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Knowledge can be shown through circumstantial evidence. But, there must be a "clear expression or other affirmative steps taken to foster infringement." *Id.* at 937. "[M]ere knowledge of infringing potential or of actual infringing uses would not be enough." *Id.*

It is undisputed that the contract between AAP and Mr. Ross gave Vesta "the absolute right to use any photography taken of the home and inventory." The only acts of inducement that AAP cites are the contract and the sending of DB Link 3 and the Vimeo Link. But, there is no evidence that Mr. Ross knew AAP would photograph the Tillinghast Residence when he signed the Vesta contract, several months before AAP copyrighted the photos, on May 27, 2020. Thus, there is no evidence that Mr. Ross agreed to the photography provision above for the purpose of fostering infringement. Additionally, as stipulated by the parties, there was no infringement traceable to DB Link 3. The email forwarding that link said, "We will be swapping

28

some of these for similar shots in the MLS." The email does not encourage Vesta to further republish the images. The email forwarding the Vimeo Link did not have any other content. So, it also did not directly encourage infringement.

Mr. Ross submitted an affidavit saying his sole purpose in sending Ms. Longacre DB Link 3 and the Vimeo Link was to show her how Vesta's interior design work was going to be depicted when the property was listed on the MLS, and for her review and comment. DSOMF ¶39 (citing ECF No. 114-3, ¶ 17). AAP disputes this fact. ECF No. 128 ¶39. It cites Mr. Ross' deposition testimony that he sent photographs to Vesta "to show them what was going to occur in my brochure." *Id.* (citing ECF No. 111-2 35:11-19). Even if I reject Mr. Ross' affidavit and assume he wanted Vesta to know the content of a brochure he was creating for the Tillinghast Residence, that conduct does not raise a circumstantial inference that Mr. Ross was encouraging Vesta to use DB Link 3 or the Vimeo Link to infringe AAP's copyright.

So, when distilled down, the dispositive question is whether, in the absence of other evidence of knowledge and intent and viewing the contract language in the light most favorable to AAP, AAP has shown that a reasonable jury could conclude that Defendants knew or should have known that Vesta would use the links to infringe AAP's copyrights. I find that the answer is "No" and that Defendants are entitled to summary judgment on Count III. The contract does not specifically reference AAP's photographs. It could equally be read to apply to photographs Vesta itself took of the Tillinghast Residence. Even reading this contract term in the light most favorable to Vesta, it is not a "clear expression or other affirmative steps taken to foster

infringement." *Id.* at 937. At best, it infers "mere knowledge of infringing potential." Although there is a potential circumstantial inference of knowledge, that inference is not strong enough that a reasonable jury could rely on it to find contributory copyright infringement.

   *F. Defendants' Affirmative Defenses*

   AAP moves for partial summary judgment on all eight of Defendants' affirmative defenses insofar as they apply to Counts I and II. ECF No. 111 at 6-12. Because Counts I and II fail to state a *prima facie* case, I need not reach the issue of whether valid affirmative defenses exist for those counts.[6]

## REPORT AND RECOMMENDATION

   Accordingly, this Court **RECOMMENDS** that the District Court

   1.  GRANT Defendants' Motion for Summary Judgment on all counts.

   2.  DENY Plaintiff's Motion for Partial Summary Judgment.

## NOTICE OF RIGHT TO OBJECT

   A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file

---

[6] I note that Defendant's Response addresses only the fair use defense (Fourth Affirmative Defense). ECF No. 122 at 8-15. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (brackets in original) (internal citations omitted).

objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 24th day of April 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE